IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAMON M. MYERS,       )
      )
      Plaintiff,       )       Civil No. 16-1312
      )       District Judge Nora Barry Fischer
      vs.       )
      )
AUTOZONERS, LLC,       )
      )
      Defendant.       )

## MEMORANDUM OPINION

I.     INTRODUCTION

This case arises from Plaintiff Damon M. Myers' allegations that his former employer, Defendant AutoZoners, LLC ("AutoZone"), discriminated against him because of his race and retaliated against him in violation of Title VII and the Pennsylvania Human Relations Act. Immediately following the case management conference, the parties engaged in settlement negotiations. Although the parties agree that they entered into a valid and enforceable settlement agreement that day, they vigorously dispute whether Mr. Myers agreed to a general release as part of the settlement. AutoZone contends that he did; but, Mr. Myers is adamant that he authorized his attorney to settle this case only if the settlement did not affect a wrongful discharge claim that he was concurrently pursuing in the EEOC.

Now pending before the Court is AutoZone's motion to enforce settlement agreement, wherein it seeks an order from the Court requiring Mr. Myers "to execute the Release agreed to by the parties and abide by the terms of the settlement agreement [] which are contained in the Release." (Docket Nos. 42, 42-1). After the filing of AutoZone's motion, Mr. Myers' counsel withdrew his appearance and Mr. Myers has since been proceeding *pro se*. Mr. Myers has also filed a motion that is pending before the Court, entitled "Motion @ Appeal & Plea to Judge

[Fischer]," which, among other things, does not oppose the Court enforcing the parties' agreement to settle this case but requests that the Court order that the settlement does not include the wrongful discharge claim that he was concurrently pursuing in the EEOC. (Docket No. 67). The Court has carefully considered the parties' legal memoranda and has held two hearings/arguments in connection with this dispute. At those hearings, AutoZone did not offer any evidence to support its position that Mr. Myers agreed to a general release. Mr. Myers, in contrast, provided his own sworn statements and testimony to support his position.

For the reasons that follow, the Court finds that Mr. Myers did not agree to release the wrongful discharge claim that he was concurrently pursuing in the EEOC when the parties settled this case. Therefore, AutoZone's motion to enforce [42] will be GRANTED, insofar as it seeks to have the Court order enforcement of the settlement, but DENIED insofar as it seeks to have Mr. Myers execute its general release; and, Mr. Myers' motion [67] will be GRANTED, to the extent that he seeks to have the Court order that the parties' settlement does not include the wrongful discharge claim.

II.     BACKGROUND

A. *Personal Background and Nature of Allegations*[1]

Mr. Myers is a 54 year-old, African-American male. He attended and graduated from McKeesport High School. After high school, Mr. Myers earned an associate's degree from the Los Angeles Community College and also obtained a medical transcription certificate. At the time of the July 10, 2017 hearing, Mr. Myers was working as a patient-sitter at the VA Hospital and also working as a security guard at the Convention Center.

---

[1]      The following facts regarding Mr. Myers' personal background were provided to the Court during the March 28, 2017 case management conference and at the July 10, 2017 hearing. *See* (Hr'g Tr. from 7/10/2017 at pp. 12-13).

Relevant here, Mr. Myers began working for AutoZone on a part-time basis in November 2011 as a Commercial Driver. After working there for approximately18 months, he sought to be promoted to a full-time position. Although his request for full-time employment was denied, he asserts that at least ten other newly-hired part-time Caucasian employees were promoted to full-time employment status and/or provided with the benefits that he had requested during the same time period. Consequently, on February 21, 2014, Mr. Myers filed a charge of discrimination with the EEOC for AutoZone's purported failure to promote him to a full-time position. According to Mr. Myers, AutoZone began to scrutinize his work and started taking retaliatory disciplinary actions against him over the next several months, which ultimately led to his termination in November 2014. AutoZone informed Mr. Myers that it was firing him for being rude and using profane language when speaking to a customer. Mr. Myers denies this conduct and instead claims that AutoZone terminated him in retaliation for filing an EEOC charge.

B. *Administrative Proceedings before the EEOC*[2]

Altogether, Mr. Myers filed three charges of discrimination against AutoZone in the EEOC. He filed the first two charges while he was still working for AutoZone, the first being filed on February 21, 2014, at Charge Number 533-2014-519, wherein he asserted that AutoZone's failure to promote him to a full-time position was discriminatory. *See* (Docket No. 60-1 at 5).[3] On July 14, 2014, Mr. Myers filed the second charge of discrimination, at Charge Number 533-2014-973, asserting that since he filed the first charge, three more similarly-situated white employees were promoted to full-time status and AutoZone was retaliating against him for filing

---

[2]     Mr. Myers' EEOC file was docketed on August 21, 2017. (Docket No. 60-1). However, the Court subsequently removed the file from public view after discovering that numerous pages therein contained personal identifiers. *See* LCvR 5.2.

[3]     Although this charge of discrimination was not included in the EEOC file that Mr. Myers provided to the Court, it is referenced repeatedly throughout the file.

the first charge.  (*Id.*).[4]  AutoZone responded to the first and second charges on August 13, 2014 and October 27, 2014, respectively.  (*Id.* at 12-14, 22-26).  In support of its position that its decisions were legitimate and non-discriminatory, it attached nine write-ups that were issued to Mr. Myers from November 9, 2013 to May 22, 2014.  (*Id.* at 54-62).[5]

Thereafter, in November 2014, AutoZone terminated Mr. Myers' employment.  In a letter dated December 11, 2014, Mr. Myers notified the EEOC that his employment with AutoZone had ended because AutoZone accused him of swearing at a customer, which Mr. Myers denied, but stated that he was moving on with his career, having secured a position with FedEx.  (*Id.* at 71).  In January and February 2015, Mr. Myers sent the EEOC documents from his unemployment compensation proceedings, (*Id.* at 69-70, 73-77, 88), and on March 11, 2015, he requested a continuance of the EEOC investigation, asserting, among other things, that AutoZone's claimed reasons for terminating him were false.  (*Id.* at 86).

More than a year later, on June 30, 2016, Mr. Myers filed a third charge of discrimination, at Charge Number 533-2014-973 (Amended), which amended his second charge to include additional allegations of race discrimination and retaliation that allegedly occurred between filing his second charge in July 2014 and his termination in November 2014.  (*Id.* at 3-4).  The next day,

---

[4]     Before filing the second charge, Mr. Myers submitted letters to the EEOC on June 11, 2014 and July 2, 2014 that outlined incidents in May 2014 and June 2014 that he believed were discriminatory or retaliatory.  (Docket No. 60-2 at 6-9).  Shortly after filing the second charge, Mr. Myers submitted updated letters to the EEOC, describing additional incidents in July 2014.  (Docket No. 60-1 at 80, 96-97).  On October 27, 2014, Mr. Myers sent a new letter to the EEOC, detailing incidents that occurred between August 21, 2014 and October 24, 2014.  (*Id.* at 81-83).

[5]     Specifically, on November 9, 2013, Mr. Myers was written up for possessing alcohol at work.  From December 14, 2013 to May 8, 2014, he received five write-ups relating to attendance issues.  On Friday, May 16, 2014, Mr. Myers was written up for taking home a fuel card for the van he was driving and not returning it until the following Monday.  On May 22, 2014, Mr. Myers was written up for taking store merchandise for a different route.  The Court notes that all of these write-ups have handwritten language at the bottom of the pages denying the basis for the violations.

on July 1, 2016, EEOC Investigator John Wozniak sent AutoZone's counsel the third charge of discrimination, with a letter stating:

> In keeping with our last discussion during the conciliation conference with [Mr. Myers'] initial charge, I informed you that his second charge identified above would be amended to include new issues of alleged employment discrimination and retaliation that occurred during the time period between 07/15/2014 and ending with his termination effective 11/25/2014.

(*Id.* at 1).[6] AutoZone responded to the third charge on July 27, 2016, again denying discrimination and attaching an additional six write-ups that were issued to Mr. Myers from September 15, 2014 to November 20, 2014. (*Id.* at 17-21, 63-68).[7] AutoZone also stated in its letter that Mr. Myers' counsel informed it that he would be filing a federal lawsuit on behalf of Mr. Myers in this Court. (*Id*. at 17). Although Mr. Myers did, in fact, initiate the litigation in this Court approximately one month later in August 2016, Mr. Myers nevertheless continued pursuing the third charge in the EEOC concurrently with this litigation. The EEOC eventually issued a determination on August 31, 2017 and a right-to-sue letter on September 28, 2017 on the third charge (approximately six months *after* the parties agreed to settle this action). (Docket Nos. 67-1, 72).

### C. Procedural History in this Court

Mr. Myers initiated his case in this Court on August 26, 2016 through his then-counsel, Darren K. Parr, Esq. ("Attorney Parr"). (Docket No. 1). Although the original complaint was organized as asserting only one count for "Racial Discrimination in violation of Title VII and

---

[6]    The EEOC file submitted by Mr. Myers does not have any documents relating to the parties' failed conciliation attempts regarding the first charge that Investigator Wozniak references in the letter.

[7]    Three of the write-ups pertain to complaints from motorists about Mr. Myers' driving on September 15, September 20, and October 9, 2014. Mr. Myers was separately written up on October 9, 2014 for failing to adhere to his delivery schedule. On October 27, 2014, he was written up for insubordination and exhibiting disruptive behavior. The final write-up was from November 20, 2014 for failing to provide proper customer service and unsatisfactory job performance; this incident led to his termination. Like the other set of write-ups, there is handwritten language at the bottom of each page denying AutoZone's basis for the violations.

PHRA," it included allegations relating to disparate treatment (unequal pay and benefits, failure to promote) and hostile work environment. (*Id.* at ¶¶ 26-31). The complaint characterized Mr. Myers' termination as "unlawful" but did not explicitly allege that AutoZone fired him because he was black, (*Id.* at ¶ 5), and it suggested, but did not specifically assert, that AutoZone's termination of Mr. Myers was retaliatory. (*Id.* at ¶ 15). In addition, it alleged that Mr. Myers had satisfied all relevant procedural and administrative requirements under Title VII. (*Id.* at ¶ 4).[8]

Approximately two months later, AutoZone responded to the complaint by filing a Rule 12(b)(6) motion to dismiss for failure to state a claim, Rule 12(f) motion to strike, and/or Rule 12(e) motion for more definite statement, and brief in support. (Docket Nos. 11, 12). Therein, AutoZone argued that the complaint: (1) failed to state a PHRA claim for failing to allege facts relative to exhaustion and that the EEOC charge referenced in the complaint only discussed failure to promote, not unequal pay; (2) failed to state a claim for hostile work environment under both Title VII and the PHRA; and (3) to the extent that the complaint was asserting a claim for retaliation, such claim should either be stricken or Plaintiff should be ordered to clarify what claims he is asserting. (*Id.*).

In response to AutoZone's motion, Mr. Myers, through Attorney Parr, filed a first amended complaint on November 15, 2016, (Docket No. 16), resulting in AutoZone's motion being terminated as moot. (Docket No. 17). Like the original complaint, the first amended complaint contained allegations referencing failure to promote, unequal pay, and hostile work environment under the single heading, "Racial Discrimination in violation of Title VII." (Docket No. 16 at ¶¶

---

[8]     The complaint erroneously asserts that Mr. Myers filed the charge of discrimination with the EEOC on March 24, 2014. (Docket No. 1 at ¶ 4.a). The first amended complaint and second amended complaint contain the same error. (Docket No. 16 at ¶¶ 4.a., 20); (Docket No. 21 at ¶¶ 4.a, 30). As noted, Mr. Myers filed the first charge of discrimination with the EEOC on February 21, 2014. The Court also notes that there is no mention of the other two described charges of discrimination in any of Mr. Myers' complaints.

16-22). The first amended complaint again characterized Mr. Myers' termination as "unlawful" and further alleged that AutoZone's decision to terminate Mr. Myers' employment was retaliatory and based on Mr. Myers' filing of the first charge of discrimination with the EEOC. (*Id.* at ¶ 20). According to the first amended complaint, Mr. Myers had satisfied all procedural and administrative requirements of Title VII and the PHRA with respect to all claims set forth therein prior to filing suit. (*Id.* at ¶ 4).

AutoZone responded to the first amended complaint by filing another motion under Rules 12(b)(6), 12(e), and/or 12(f), and a brief in support. (Docket Nos. 18, 19). AutoZone reasserted that, given the way that the first amended complaint was organized, it remained unclear if Mr. Myers was alleging claims for: (1) retaliatory discharge or (2) hostile work environment. (*Id.*). If so, AutoZone argued that Mr. Myers failed to state plausible claims for those causes of action. (*Id.*). In the alternative, AutoZone sought to have Mr. Myers provide a more definite statement and clarify what claims he was asserting against it. (*Id.*).

Pursuant to the Court's standing order on motions practice, Mr. Myers' response to AutoZone's motion was due on December 20, 2016. (Docket No. 13). Attorney Parr, however, did not respond to the motion on behalf of Mr. Myers; instead, he informed the Court on January 3, 2017 that there was no opposition to it. Accordingly, on January 3, 2017, the Court signed AutoZone's proposed order that was attached to its motion, adding handwritten language reflecting the Court's discussion with Attorney Parr. (Docket No. 20). Said order dismissed Mr. Myers' hostile work environment claims, with prejudice**,** and struck all allegations relating to same, including paragraphs 18 and 19 of the first amended complaint.[9] (*Id.*). The order also dismissed

---

[9]    Paragraphs 18 and 19 of the first amended complaint aver:

> 18.    Defendant's harassment of Plaintiff was so severe and extreme as
>         to alter the conditions of Plaintiff's employment and created a

Mr. Myers' retaliation claims, with prejudice, and struck all allegations relating to same, including

paragraph 20 of the first amended complaint.[10]  (*Id.*).  Finally, the order required that Mr. Myers

file a second amended complaint by January 23, 2017.  (*Id.*).

Mr. Myers, through Attorney Parr, filed the second amended complaint on January 23,

2017.  (Docket No. 21).  The second amended complaint not only asserted a claim for failure to

promote, but also asserted claims for retaliation and hostile work environment, which the Court

---

hostile work environment. More specifically, in either late October 2014 or early November 2014, the Plaintiff was stripped of his duties as a driver for alleged "moving violations". However, at no time during his employment did the Plaintiff ever receive a traffic citation while working as a driver for the Defendant. Thereafter, the Plaintiff was required to work in the store and his work was placed under strict scrutiny by management much more than similarly situated white employees. Moreover, negative and derogatory comments were directed towards the Plaintiff by management personnel of the Defendant while working in his new capacity in the store. Shortly thereafter, the Plaintiff's employment was terminated.

19.     Thus, Defendant is liable for the racial harassment of Plaintiff, under Title VII because the individuals responsible for the harassing conduct are Defendant's agents and/or supervisors. The Plaintiff alleged that he was exposed to a hostile work environment in his initial Complaint to the EEOC and thus, the same was considered by the EEOC in providing the Right to Sue letter.

(Docket No. 16 at ¶¶ 18, 19).

[10]     Paragraph 20 of the first amended complaint avers:

20.     In response to the actions of the Defendant as described above, on or about March 24, 2014 the Plaintiff, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Almost immediately thereafter, Defendant issued Myers' warnings and corrective actions which lead [sic] to his termination on November 25, 2014. At that time, it is alleged that he was being rude and using profanity towards a customer a claim which Plaintiff denies.

(Docket No. 16 at ¶ 20).

had just dismissed, with prejudice. (*Id.*). As such, on February 3, 2017, AutoZone filed another motion to dismiss under Rule 12(b)(6) and brief in support. (Docket Nos. 23, 24). In addition to seeking dismissal of the retaliation and hostile work environments claims, AutoZone contended that the Court should dismiss "any potential race discrimination claims based on … **discharge** because Plaintiff has now had three opportunities to identify whether he is asserting such claims" but has only claimed that his termination was due to retaliation. (Docket No. 24 at 2, 5) (emphasis added). Thus, in its proposed order, AutoZone sought to have the Court "dismiss all of Plaintiff's claims, with prejudice, except for the Title VII race discrimination claim based on a failure to promote him to a full-time, non-management position within 300 days from the filing of his EEOC charge." (Docket No. 23-1).

Given the nature of the issues and repeated motions practice, the Court scheduled oral argument on the motion to be combined with a case management conference set for March 28, 2017. (Docket Nos. 28, 29). Thereafter, Mr. Myers, through Attorney Parr, responded to AutoZone's motion to dismiss on March 2, 2017, conceding the dismissal of the retaliation and hostile work environment counts and confirming that "the primary and now limited issue pending before this Court is whether the Defendant's consistent failure to promote the Plaintiff to a full time, non-management position for which he was clearly qualified was based upon the Plaintiff's race and thus a Title VII violation." (Docket No. 30 at ¶¶ 5, 6). Based on Mr. Myers' response, the Court entered an order on the same date dismissing the retaliation and hostile work environment claims in the second amended complaint, with prejudice. (Docket No. 32). Notably, however, the Court did not enter AutoZone's proposed order dismissing all of Mr. Myers' unasserted claims, including the wrongful discharge claim, with prejudice. Nevertheless, the parties stated in their Rule 26(f) Report dated March 13, 2017 that "the only issue that remains is

whether Plaintiff's Title VII failure to promote race discrimination claims are limited to promotion decisions within 300 days of when he filed his EEOC charge." (Docket No. 33 at ¶ 5).

The Court held the combined motion hearing/case management conference on March 28, 2017. (Docket No. 36). At this proceeding, the Court took AutoZone's motion under advisement but informed the parties that it was likely to deny the motion. (*Id.*). The Court then proceeded to enter a case management order and an order referring the parties to participate in a mediation with the Hon. Eugene F. Scanlon, Jr. (Dockets Nos. 38, 39). Later that day, AutoZone's counsel, Tracy E. Kern, Esq., informed the Court that the parties reached a verbal agreement to settle the case and that she would inform the Court as soon as the agreement is signed. (Staff Note from 3/28/2017). In any event, on March 31, 2017, the Court issued its Memorandum Opinion & Order denying AutoZone's motion to dismiss. (Docket No. 40). Therein, the Court noted that Mr. Myers' "sole remaining claim" – that is, Count I of the second amended complaint for failure to promote – needed to be developed through discovery. (*Id.*).

On April 6, 2017, the Court administratively closed the case because counsel for the parties contacted the Court and advised that the case was resolved. (Docket No. 41).[11] But, when Myers was presented with the memorialized agreement a few days later, he refused to sign it because it contained a general release, which Mr. Myers claimed he did not authorize.

Consequently, on May 26, 2017, AutoZone filed the pending motion to enforce settlement and brief in support. (Docket Nos. 42, 43). On June 12, 2017, Attorney Parr filed a response to the motion to enforce on Mr. Myers' behalf, (Docket No. 45), and AutoZone filed a reply on June 19, 2017. (Docket No. 47). On July 10, 2017, the Court held a hearing and oral argument on AutoZone's motion to enforce. (Docket No. 56). At this hearing, AutoZone's counsel, with

---

[11] The case has remained administratively closed since this date.

permission from the Court, appeared telephonically. AutoZone presented no evidence. Mr. Myers, however, stated under oath that he explicitly informed Attorney Parr that he would settle this case only if it did not affect his wrongful discharge claim that was pending in the EEOC. (Hr'g Tr. from 7/10/2017 at pp. 13-14).[12] Mr. Myers also asserted that his text message communications with Attorney Parr would confirm that he did not agree to the general release; however, neither Mr. Myers nor Attorney Parr retained the messages. The Court informed the parties that it would take judicial notice of the pending EEOC charge and would contact the EEOC investigator to review the file. Moreover, at the same hearing, the Court granted Attorney Parr's motion to withdraw as Mr. Myers' counsel, and entered an order to the same effect the next day. (Docket No. 57). Since that July 10, 2017 hearing and argument, Mr. Myers has been proceeding herein *pro se*.

On August 14, 2017, the Court ordered that the parties forward it a copy of Mr. Myers' EEOC file, as the EEOC representative advised that he was not authorized to provide same directly to the Court. (Docket No. 58). The next day, AutoZone filed a copy of Mr. Myers' third charge of discrimination and AutoZone's response to same. (Docket No. 59). Additionally, on August 21, 2017, Mr. Myers had his EEOC file docketed by the Clerk's Office;[13] in the same filing, he also requested that the Court grant him a subpoena to retrieve his text messages with Attorney Parr from his mobile carrier, AT&T. (Docket Nos. 60, 60-1).

On September 1, 2017, the Court held an in camera telephonic status conference with Mr. Myers and Attorney Parr regarding the text messages issue. (Docket No. 63). Following the

---

[12] Although Counsel for both parties "requested preparation of the [July 10, 2017] transcript, with the cost of same to be borne equally," (Docket No. 56), they did not subsequently "pay for and secure" it. *See* (Hr'g Tr. from 10/26/2017, Docket No. 75 at p. 3). Thus, the transcript from the July 10, 2017 proceeding was never filed on the docket.

[13] Mr. Myers separately mailed a hard copy of his EEOC file to the Court, which was received on August 23, 2017.

conference, the Court entered an order requiring that AT&T produce the relevant text message communications between Mr. Myers and Attorney Parr for the Court's in camera review. (Docket No. 63-1).

On September 14, 2017, AT&T contacted the Court to obtain their phone numbers, which the Court forwarded to AT&T that same day. (Docket No. 65). AT&T then responded to the Court's order on September 22, 2017. The production, however, was incomplete, as AT&T did not provide the content of the messages but rather only listed the date and time of each text message and call between Mr. Myers and Attorney Parr. (Docket No. 66). The Court held another in camera telephonic status conference with Mr. Myers and Attorney Parr on October 5, 2017 to discuss AT&T's incomplete production and informed them that, there appearing to be no other means to retrieve the lost text messages, the Court would proceed without same in resolving the dispute between AutoZone and Mr. Myers. (Docket No. 71).

In the interim, on September 25, 2017, Mr. Myers filed a *pro se* motion, entitled "Motion @ Appeal & Plea to Judge [Fischer]," which is also pending before the Court. (Docket No. 67). In this motion, Mr. Myers seeks, among other things, to have the Court order that the wrongful discharge claim he was pursuing in the EEOC was "separate" from the settlement in this case. (*Id.*). Mr. Myers also attached the EEOC's determination letter from August 31, 2017 to the motion, wherein the EEOC concluded that AutoZone's termination of Mr. Myers was because of his race and retaliatory. (Docket No. 67-1). AutoZone responded to the motion on September 29, 2017. (Docket No. 69). Thereafter, Mr. Myers mailed the Court an EEOC notice of conciliation failure and a right-to-sue letter, both dated September 28, 2017. At the in camera telephonic status conference held on October 5, 2017, Mr. Myers confirmed that he intended for this document to be filed on the Court's docket as a supplement to his pending *pro se* motion, which the Court filed

the following week. (Docket Nos. 71, 72). Neither AutoZone nor Mr. Parr filed a response to this document.

On October 26, 2017, the Court held another telephonic hearing and oral argument, as a continuation of the July 10, 2017 proceeding. (Docket No. 74). Like the first proceeding, AutoZone presented no evidence and Mr. Myers testified under oath that he did not agree to the general release that AutoZone is seeking to enforce. (*Id.*); *see also* (Hr'g Tr. from 10/26/2017, Docket No. 75 at pp. 23-24). Attorney Parr, having since withdrawn as Mr. Myers' counsel, listened to the proceeding but did not participate. (*Id.* at p. 4). At the conclusion of the proceeding, Mr. Myers and AutoZone declined to submit supplemental briefing. (*Id.* at p. 39). Accordingly, both motions are fully briefed and are ripe for disposition.

III.    LEGAL STANDARD

A motion to enforce settlement is analyzed under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement. *Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 & n. 5 (3d Cir. 1991). "This is not a mere coincidence. The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same – both deprive a party of his right to be heard in the litigation." *Id.* Given same, the Court must "view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Andreoli v. Gates,* 482 F.3d 641, 647 (3d Cir. 2007). The Court "shall grant summary [enforcement] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to [enforcement] as a matter of law." Fed.R.Civ.P. 56(a). *See also Pearson v. Prison Health Svc.*, 850 F.3d 526 (3d Cir. 2017) ("Material facts are those that affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is

sufficient to permit a reasonable jury to return a verdict for the non-moving party." (internal marks and citations omitted)). A court must hold an evidentiary hearing when material facts concerning the terms of a settlement agreement are disputed by the parties. *Tiernan*, 923 F.2d at 1031. (quoting *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1991)). Moreover, because Mr. Myers is proceeding *pro se*, the Court must liberally construe his filings, *Erikson v. Pardus*, 551 U.S. 89, 94 (2007), which this Court has done, and has afforded him leeway in these enforcement proceedings. *See Tabron v. Grace*, 6 F.3d 147, n. 2 (3d Cir. 1993).

IV.    DISCUSSION

The validity and enforceability of settlement agreements is governed by state contract law. *Shell's Disposal & Recycling, Inc. v. City of Lancaster,* 504 F. App'x 194, 200 (3d Cir. 2012). Because all of the transactions leading to this dispute occurred in Pennsylvania, the Court applies Pennsylvania law. *Id.* at n. 10 (citing *Tiernan*, 923 F.3d at 1033).[14] Under Pennsylvania law, to be enforceable, a settlement agreement must possess all of the elements of a valid contract. *Mazzella v. Koken,* 739 A.2d 531, 536 (Pa. 1999). "As with any contract, it is essential to the enforceability of a settlement agreement that 'the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement].'" *Id.* (citing *Onyx Oils & Resins, Inc. v. Moss,* 80 A.2d 815, 817 (Pa. 1951)) (alteration in original). "If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced." *Id.* at 537 (citing *Miller v. Clay Twp.,* 555 A.2d 972, 974 (Pa. Cmwlth. 1989)). This is so even when the parties "intend to adopt a formal document with additional terms at a later date," *Courier Times, Inc. v. United Feature Syndicate, Inc.,* 445 A.2d 1288, 1295 (Pa. Super. Ct. 1982), or simply "intend to formalize their agreement in writing but have not yet done so." *Pisarz v. PPL Corp.*, 604 Fed. App'x 196, 201 (3d Cir. 2015).

---

[14]    AutoZone agrees that Pennsylvania law governs the dispute. *See* (Docket No. 43 at 3) ("Pennsylvania contract law applies to the analysis of whether the settlement agreement is enforceable.").

"Because a court is constrained to construe the parties' contract based on the parties' outward and objective actions – … a subjective, or 'true and actual,' meeting of the minds is not necessary for an enforceable contract to form." *Nicholas v. Hofmann*, 158 A.3d 675, 693 (Pa. Super. 2017).

At the outset, the Court notes that both AutoZone and Mr. Myers agree that they entered into a valid and enforceable settlement agreement in this case on March 28, 2017.[15]  Mr. Myers' former counsel, Attorney Parr, likewise agrees that the parties reached a valid and enforceable settlement agreement on that date.[16]  As will be explained, there is no dispute that Mr. Myers agreed to settle this case in exchange for AutoZone paying him $3,500.  Because this settlement agreement possesses all of the elements of a valid contract, *see Mazzella,* 739 A.2d at 536, the Court will enforce it.  The only real dispute, then, is whether Mr. Myers also agreed to a general release as part of the settlement.  *See Clay v. Burlington Coat Factory Warehouse Corp.*, 2008 WL 939184, at *1 (W.D. Pa. 2008) ("[T]he parties expressed mutual assent to settle this litigation.  Indeed, the amount of settlement is not in dispute.  Neither party vigorously contends that the case is not in fact settled.  The only dispute is over the wording of the release.").

Aside from asking the Court to take judicial notice of the parties' Rule 26(f) report, AutoZone presented no evidence on this issue,[17] notwithstanding its acknowledgment that it bears the burden of proof.  (Hr'g Tr. from 7/10/2017 at pp. 39); (Hr'g Tr. from 10/26/2017, Docket No. 75 at p. 31); (Docket No. 43 at 4).  Instead, AutoZone elected to rely on its attorneys' unsworn

---

[15]     *See, e.g.,* (Docket No. 43 at 4) (AutoZone asserting that "there is no dispute that a valid contract was reached"); (Docket No. 69 at ¶ 8) (same); (Hr'g Tr. from 7/10/2017 at pp. 32, 43) (Mr. Myers asserting that he was willing to settle this case on March 28, 2017 and that he still believes the parties reached a settlement on that date).

[16]     *See* (Docket No. 45 at ¶ 1) ("It is acknowledged that the parties reached a valid settlement agreement on March 28, 2017."); (Hr'g Tr. from 7/10/2017 at p. 8) ("[I]t is my opinion that we did reach a valid agreement.").

[17]     AutoZone did not attach any affidavits or declarations to its motion and did not offer any evidence or call any witnesses at either hearing.

statements in their legal memoranda and during the hearings/oral arguments, as well as Attorney Parr's unsworn statements from his response to the motion to enforce, which plainly are not evidence. *See Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to [support or] defeat a summary [enforcement] motion."); *Germinaro v. Fidelity Title Ins. Co.*, 2016 WL 5942236, *2 (W.D. Pa. 2016) (attorney argument is not evidence, but simply the *characterization* of the evidence on the record, and to the extent that it is unsupported by the evidence, it should be disregarded). In particular, the Court notes that Attorney Parr was present at both hearings, but AutoZone never attempted to call him as a witness.[18] *See, e.g., Pisarz*, 604 Fed. App'x at 199-202 (noting that the plaintiff's former attorneys provided testimony that refuted the plaintiff's position at the hearing on the defendant's motion to

---

[18]     AutoZone certainly had the opportunity to do so. At the outset of the October 26, 2017 telephonic hearing, the Court stated: "Now, as everyone knows, I scheduled today's hearing to first hear whether there is any more evidence that needs to be put before the Court relative to AutoZone's motion to enforce settlement agreement, which is filed at Docket No. 42." (Hr'g Tr. from 10/26/2017, Docket No. 75 at p. 4). After reviewing the procedural history of the case, the Court asked AutoZone's attorneys if they wished to present any evidence on their motion and they declined. (*Id.* at p. 11). When Mr. Myers stated that he wished to testify under oath, the Court stated that if there was an objection to Mr. Myers testifying by telephone, "we would adjourn on the phone and [the Court] would reset so that we can have live testimony with Mr. Myers." (Hr'g Tr. from 10/26/2017, Docket No. 75 at p. 12). AutoZone's counsel responded, "I don't believe we have any objection, Your Honor, to proceeding on the phone." (*Id.*) Additionally, when Mr. Myers was testifying and referenced the above-mentioned AT&T phone records between himself and Attorney Parr, the Court realized that it did not forward the records to AutoZone's counsel in advance of the hearing, as the records contain personal identifiers and were filed under seal in accordance with the Court's Local Rules. (*Id.* at pp. 16, 19-20). The Court stated:

> I apologize that we did not think to have those records also sent to the folks at AutoZone. So to that end, I think we're going to have to reconvene, and we can either do that live or by telephone. I've looked on my calendar, and I could continue this hearing on October 30 starting as early as 8:30 in the morning and running until about 10:30 or 11. I could also reconvene on the afternoon of November 1 starting at 1:15 … And the next available date that I would have on my calendar is November 27 at 9:00.

(*Id.* at pp. 16-17). AutoZone again stated that it was not necessary to continue the telephonic hearing and elected to "proceed with this hearing now." (*Id.*at p. 18).

enforce settlement). In addition, Attorney Parr's statements in the record belie AutoZone's position that Mr. Myers agreed to a general release. In this regard, AutoZone contends that Attorney Parr "*completely agrees* with AutoZone that the parties entered into a valid settlement on March 28, 2017, *in which all of Plaintiff's claims were released* in exchange for a monetary payment." (Docket No. 47 at ¶ 1) (emphasis added); *see also* (Docket No. 69 at ¶ 8) (asserting that Attorney Parr agrees that the wrongful discharge claim and "any and all possible claims were resolved that day").

While Attorney Parr has indeed taken the position that a valid settlement agreement was reached between the parties on March 28, 2017, he also contends that the parties did not have a "full meeting of the minds" with respect to the issue of whether Mr. Myers released his wrongful discharge claim. (Hr'g Tr. from 7/10/2017 at pp. 8-9). Attorney Parr claims that during the settlement negotiations, Mr. Myers "refused to forgo or sign away his right to pursue a pending wrongful discharge claim," and that Attorney Parr relayed this information to AutoZone and its counsel. (Docket No. 45 at ¶¶ 3-4). However, Attorney Parr also denies knowing that Mr. Myers was pursuing the wrongful discharge claim in the EEOC concurrently with this litigation, and claims that he believed that Mr. Myers was actually referring to and refusing to release the retaliation claim that the Court already dismissed. (*Id.* at ¶ 4); (Hr'g Tr. from 7/10/2017 at pp. 7-8). According to Attorney Parr, the parties then "came to a resolution" and Attorney Parr "indicated to Mr. Myers that that resolution was for *the case that was pending before the Court*." (Hr'g Tr. from 7/10/2017 at pp. 7-8) (emphasis added). Despite the apparent miscommunication between Mr. Myers and Attorney Parr (and possibly between Attorney Parr and AutoZone's counsel), Attorney Parr denies that Mr. Myers agreed to release his wrongful discharge claim but then later had a "change of heart," as AutoZone asserts, and has stated multiple times that the

parties did not have a meeting of the minds on this term. (Docket No. 45 at ¶¶ 1, 2); (Hr'g Tr. from 7/10/2017 at p. 8). In sum, AutoZone presented no evidence in support of its position that Mr. Myers agreed to a general release.

On the other hand, Mr. Myers was administered an oath at both hearings and offered his own sworn statements and testimony to support his position. (Hr'gTr. from 7/10/2017 at p. 12); (Hr'g Tr. from 10/26/2017, Docket No. 75 at p. 13). Shortly after he was duly sworn at the July 10, 2017 hearing, the following exchange occurred between the Court and Mr. Myers:

> THE COURT: Now, you have been provided a release in this case. That release was prepared by [AutoZone's counsel] Ms. Kern and it was given to you through Mr. Parr for you to read. Did you read through it?
>
> THE PLAINTIFF: Are you talking about the settlement release?
>
> THE COURT: Yes, I am, sir.
>
> THE PLAINTIFF: Yes, I read through that and I didn't agree with it because that wasn't the terms that me and Mr. Parr recollected on Mach 28th.
>
> THE COURT: Now, why didn't you agree to the terms in the release?
>
> THE PLAINTIFF: Because the terms of the release was that when we had left your chambers Mr. Parr had texted me. Unfortunately those texts had been deleted from the phone records and the only way I can get them is through a court action or another attorney. In retrospect, we went back and forth in text messaging fashion and he said that they [AutoZone] was willing to offer me a settlement of $3,500. I said I would accept that with the contingent that that [EEOC] file across the street at the Federal Building not be included in the agreement.
>
> At that point he [Attorney Parr] texted me back, stated that would not be the case, that that file would stay at the Federal Building. I said, with that being said, I will accept that agreement of $3,500…

(Hr'g Tr. from 7/10/2017 at pp. 13-14). Mr. Myers also maintained this position later in the hearing relative to Attorney Parr's motion to withdraw as Mr. Myers' counsel. (*Id.* at pp. 32, 43).

At the October 26, 2017 telephonic hearing, Mr. Myers similarly testified under oath that he did not agree to release the wrongful discharge claim when he authorized settlement of the case, as follows:

> MR. MYERS: I agreed to the terms of -- I agreed to the terms of -- as long as that second claim was not attached to the first claim, I was willing to settle that matter.
>
> THE COURT: Okay. So your position is you did not agree to all the terms, is that right?
>
> MR. MYERS: Absolutely not. That's why I never signed it.

(Hr'g Tr. from 10/26/2017 at p. 24). AutoZone then conducted a brief cross-examination of Mr. Myers. (*Id.* at pp. 25-27). The cross-examination did not, however, challenge Mr. Myers' position that he refused to release the wrongful discharge claim as part of the settlement. (*Id.*).[19]

When a district court holds a hearing on a motion to enforce settlement, it has the authority to make factual findings and credibility determinations based on the evidence presented by the parties. *Tiernan*, 923 F.2d at 1031 n. 5; *DeHainaut v. California Univ. of Pa.*, 490 Fed. App'x 420, 422 (3d Cir. 2012). Having observed Mr. Myers in person at the July 10, 2017 hearing and having listened to Mr. Myers' testimony during the October 26, 2017 telephonic hearing, the Court finds that Mr. Myers was credible and forthright when he repeatedly stated that he refused to release his wrongful discharge claim in the third charge when he agreed to settle this case for $3,500. Given that Mr. Myers' testimony on this issue is unrefuted and AutoZone has presented

---

[19] Rather, AutoZone focused on whether the Court had already dismissed the wrongful discharge claim that Mr. Myers refused to release. (Hr'g Tr. from 10/26/2017 at pp. 25-27). As will be explained below, the Court did not dismiss that claim in its prior orders.

no evidence to the contrary, AutoZone has failed to carry its burden in establishing that the general release that it seeks to enforce was a term of the parties' agreement. *See Shell's Disposal*, 504 Fed. App'x at 201 (affirming the district court's factual findings because they were supported by uncontradicted evidence).

Further, to the extent that AutoZone claims that it and Attorney Parr could bind Mr. Myers to a term that Mr. Myers explicitly refused, such a position is without merit. Initially, this assertion may be rejected simply because there is no evidence in the record that AutoZone and Attorney Parr agreed that the wrongful discharge claim would be released as part of the settlement. *See Pisarz*, 604 Fed. App'x at 200. But, more fundamentally, the law in Pennsylvania "is clear and well-settled that an attorney must have express authority in order to bind a client to a settlement agreement." *Reutzel v. Douglas*, 870 A.2d 787, 789-90 (Pa. 2005). "The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly." *Id.* at 90 (citing *Starling v. West Erie Avenue Bldg. & Loan Ass'n*, 3 A.2d 387, 388 (Pa. 1939) ("apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client")). "As such, a client's attorney may not settle a case without the client's grant of express authority, and such express authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf." *Id.* (citing Restatement (Second) of Agency § 7 cmt. c (1958)). An attorney's mere assumption of his client's express authority does not satisfy this demanding legal standard. *See Kennedy v. Glover*, 2013 WL 11255024, *5 (Pa. Super. 2013) (finding that the trial court erred when it concluded that the client "did consent" to settle the action but the trial court "did not make the required finding of fact that [the client] had *expressly authorized* [the attorney] to settle the action on her behalf") (emphasis in original). In other words,

AutoZone and Attorney Parr could not bind Mr. Myers to a settlement term that Mr. Myers explicitly refused even if they tried, based on the record before the Court.

The Court also rejects AutoZone's position that the Court already dismissed Mr. Myers' wrongful discharge claim, with prejudice, in this case and, consequently, Mr. Myers could not refuse to release that claim as part of the settlement.[20] *See* (Docket No. 47 at ¶ 12); (Docket No. 69 at ¶ 7); (Hr'g Tr. from 10/26/2017, Docket No. 75 at pp. 25-27). According to AutoZone, Mr. Myers "is trying to revive a claim or carve out a claim in the settlement agreement that is dead and [that] has been dismissed by the Court." (Hr'g from 7/10/2017 at p. 6). However, having reviewed AutoZone's Rule 12 motions and the Court's orders regarding same, the Court finds that it did not dismiss a wrongful discharge claim in its prior orders. *See In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 243-45 (3d Cir. 2013) (a district court has discretion to interpret its own orders). The Court notes that it was not aware that Mr. Myers was concurrently pursuing the wrongful discharge claim in the EEOC until AutoZone filed the motion to enforce, which was months after entry of those orders. Likewise, in AutoZone's brief in support of its motion to dismiss the second amended complaint, it specifically argued that Mr. Myers *did not* assert a claim for wrongful discharge in this case, but sought dismissal of it anyway. (Docket No. 24 at 2, 5). In the Court's order from March 2, 2017, the Court did not dismiss a wrongful discharge claim, as AutoZone then requested and now contends. The Court only dismissed Mr. Myers' claims for retaliation and hostile work environment. (Docket No. 32). Additionally, even if the Court had dismissed Mr. Myers' wrongful discharge claim, AutoZone's position that Mr. Myers is legally incapable of refusing to release a dismissed or "dead" claim is without merit. *See* (Docket No. 47 at ¶¶ 5, 13);

---

[20] The Court notes that Attorney Parr also stated at the July 10, 2017 hearing that he believed the wrongful discharge claim was "dismissed by way of the retaliation charge that was dismissed by the Court earlier in the year." (Hr'g Tr. from 7/10/2017 at p. 8).

(Hr'g from 7/10/2017 at p. 6). In fact, AutoZone's position ignores that, absent private resolution between the parties, Mr. Myers could not only appeal the Court's interlocutory dismissal orders at the conclusion of the case, but could also settle any dismissed claims pending appeal. *See Palkovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) ("In general, an interlocutory order – like the First Dismissal order here – merges with the final judgment and is reviewable on appeal from the final judgment entered in the case."); 13C Charles Alan Wright, Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3533.10.2 (3d ed.) (settlement pending appeal "continues to be important not only to reduce cost and delay but also to achieve an outcome that may better address the needs of all parties").

In the same vein, the Court rejects AutoZone's argument relating to the doctrine of res judicata or claim preclusion. "Claim preclusion, formerly referred to as res judicata, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276-77 (3d Cir. 2014) (internal alteration and quotation marks omitted). AutoZone contends that even if the Court has not already dismissed the wrongful discharge claim in this case, res judicata nevertheless prevents Mr. Myers from asserting such a claim against AutoZone in a future case because: (1) Mr. Myers "is the one who claimed that he exhausted his administrative remedies on all of his claims"; and, (2) Mr. Myers did not need to file the third charge with the EEOC because his wrongful discharge claim relates to his claim for retaliation and thus is properly exhausted. (Docket No. 47 at ¶¶ 5, 12); (Hr'g Tr. from 10/26/2017, Docket No. 75 at pp. 32-33, 37-38).[21] In

---

[21]     More specifically, relying on *Anjelino v. New York Times Co.*, 200 F.3d 73, 96 (3d Cir. 1999), AutoZone argued at the October 26, 2017 hearing and oral argument:

> That [case] holds that when another allegedly retaliatory action … happens after the second – well, after a retaliation charge is already filed with the EEOC, further allegations of retaliation are not subject to exhaustion requirements. And so we would take the position that what happened – the [third] charge with the EEOC is completely irrelevant, given the

this Court's opinion, even if AutoZone's position here regarding exhaustion is correct, the issue of res judicata is not presently before the Court, as Mr. Myers has not filed a second lawsuit against AutoZone, and is not relevant to whether Mr. Myers refused to release his wrongful discharge claim during the parties' settlement negotiations on March 28, 2017.

Based on the above, the Court finds that when the parties reached a settlement in this case, the settlement did not include a term requiring Mr. Myers to release his wrongful discharge claim that was pending in the EEOC via the third charge of discrimination. Although AutoZone bears the burden of proof, it has presented no evidence that Mr. Myers ever agreed to such a term, and its position that he did is directly contradicted by unsworn statements from Attorney Parr and sworn statements from Mr. Myers. Accordingly, AutoZone has failed to meet its burden that the general release that it seeks to enforce herein was a term of the settlement. Hence, the Court will enforce the parties' oral settlement agreement from March 28, 2017, which specifically provided that Mr. Myers would settle his claims in this case for failure to promote, unequal pay, retaliation, and hostile work environment in exchange for $3,500, and that this settlement did not include Mr. Myers' wrongful discharge claim as described in his third charge that was pending in the EEOC.[22]

---

Plaintiff chose to bring the allegedly retaliatory discharge and racially discriminatory discharge claims in his complaint, which he … amended twice and represented to the Court on all three occasions that he had complied with all procedural and administrative requirements.

(Docket No. 47 at pp. 38).

[22] The Court notes that on the date of the parties' settlement, the Court entered an order referring them to mediation in accordance with the Court's mandatory alternative dispute resolution program. (Docket No. 31). Therein, the Court appointed the Hon. Eugene F. Scanlon, Jr., a retired jurist, to serve as the mediator with the costs to be apportioned 50% by Mr. Myers and 50% by AutoZone, per the parties' stipulation. (*Id.*); (Docket No. 35). By settling this case between counsel following the case management conference, AutoZone saved the expense of paying for the mediation, but would likely not have incurred the resulting time and expense devoted to these enforcement proceedings had they attended mediation with Judge Scanlon. With respect to Mr. Myers, the Court notes that he not only saved the expense of paying Judge Scanlon, but also benefits from not having to pay Attorney Parr's fees and costs as a portion of the $3,500 settlement. At the July 10, 2017 proceeding, Attorney Parr stated that Mr. Myers signed a fee agreement entitling Attorney Parr's firm to 35% of the settlement amount, but that if the Court

*See Clay*, 2008 WL 939184, at *1 ("Even if one party demands a release following settlement, this does not constitute a reopening of negotiations that provides justification for the other party to renounce the compromise.") (quoting *Pugh v. Super Fresh Food Markets, Inc.*, 640 F.Supp. 1306, 1308 (E.D. Pa. 1986)).

V.      CONCLUSION

As AutoZone presented no evidence to support its position that Mr. Myers agreed to release his wrongful discharge claim that was pending in the EEOC when the parties settled this case, the Court holds that the parties' settlement agreement did not include such claim.  Accordingly, in the Order that follows, AutoZone's motion to enforce settlement (Docket No. 42) will be granted, in part, and denied, in part; and Mr. Myers' *pro so* motion (Docket No. 67) will be granted, to the extent that Mr. Myers seeks to have the Court order that the parties' settlement does not include the wrongful discharge claim.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   December 11, 2017.

cc/ecf:  All counsel of record.

Damon M. Myers
25 North Second Street
Apartment 304
Duquesne, PA 15110
(via regular mail)

---

granted Attorney Parr's motion to withdraw, Attorney Parr would not assert a quantum meruit claim against Mr. Myers and that Mr. Myers could "certainly proceed on his own without any liens or encumbrances." (Hr'g Tr. from 7/10/2017 at pp. 11-12).